UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | No. 3:07-CR-124 |
| V. | ) | (VARLAN/SHIRLEY) |
|  | ) |  |
| MICHAEL RODNEY SHARP, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. The parties came before the Court on June 25, 2009, for a scheduled bond revocation hearing. Attorney Ralph Harwell was present representing the Defendant, who was also present. Assistant United States Attorney Tracy Stone was present representing the Government.

**I. BACKGROUND**

A Petition for Actions on Conditions of Pretrial Release and Accompanying Order [Doc. 70] was filed in this case on June 16, 2009. The Petition alleged that the Defendant violated the condition of his release requiring that he not commit any offense in violation of federal, state, or local law while on release. Specifically, United States Probation Officer Jennifer Fletcher declared, under oath, that the Defendant was arrested on June 5, 2009, by the Anderson County Sheriff's Department ("ACSD") and charged with Sale of a Schedule II Controlled Substance, Oxycodone. Officer Fletcher further declared that the Defendant sold one Oxycodone tablet to a confidential source for thirty dollars ($30.00) and that the ACSD recorded the transaction. The Court ordered the Defendant brought before the Court to show cause why his pretrial release should not be

revoked. The Defendant was arrested on June 19, 2009, and after an initial hearing on the Petition for Revocation, the Defendant's bond revocation hearing was held June 25, 2009.

## II.     TESTIMONY

At the beginning of the hearing, the Court received into evidence, as **Exhibit 1**, an Indictment handed down by an Anderson County Grand Jury charging the Defendant with Sale of a Schedule II Drug, a Class C Felony. The Court also received a lab report from the Tennessee Bureau of Investigation confirming that the tablet in question was Oxycodone into evidence as **Exhibit 2**.

Investigator Ryan Williams of the ACSD ("Inv. Williams") testified that he has been employed by the ACSD for over two years. Inv. Williams recalled that on May 26, 2009, he used a confidential informant ("CI") to conduct a controlled sale. Inv. Williams stated that he gave the CI eighty dollars ($80.00), and the CI went to the Defendant's home on Boling Road. The CI had a conversation with the Defendant and then bought oxycodone. Inv. Williams recalled that the CI attempted to buy an 80 mg oxycodone tablet but the Defendant only had 30 mg tablets. Inv. Williams stated that the transmitter the CI was equipped with did not work correctly. However, he stated that the recording device worked correctly and the recording was clear.

A compact disc containing the recording of the transaction was received into evidence as **Exhibit 3**. A portion of this recording was played for the Court. Among other things, the recording including the CI asking "Where's Michael," and an unknown person responding " 'Round here somewhere." It also contained a discussion of "30s." Inv. Williams stated that he reviewed the recording with the CI. Inv. Williams explained that the static that was heard was the CI reaching into his pocket, and finally, Inv. Williams testified that, when he asked the CI who he purchased the

oxycodone from, the CI stated that he made the purchase from the Defendant.

On cross-examination, Inv. Williams confirmed that the CI said he purchased from "Mike Sharp," the Defendant. Inv. Williams said he showed the CI pictures of the Defendant, and the CI replied that he had known the Defendant for a long time. Inv. Williams did not recall the names of Alan Breeden or any other person being mentioned. Inv. Williams testified that the CI's knowledge of the Defendant was corroborated by the Defendant letting the CI in his house on the date in question and other previous dates.

Inv. Williams confirmed that on May 26, 2009, the CI and his girlfriend were in the car that drove to the Defendant's home. Inv. Williams stated that a female officer searched the girlfriend, and the girlfriend stayed in the car while the CI went inside. Inv. Williams stated that the last part of the recorded conversation is inside the Defendant's house. Inv. Williams confirmed that the only mention of a name on the recording was when the CI asked, "Where's Michael?" Inv. Williams agreed that no names were used at the time of the exchange.

Finally, Inv. Williams testified that the CI used was reliable. Inv. Williams said he did not know whether the CI had a criminal record or charges currently pending against him. Inv. Williams said he did not know if the CI took part in the operation because he was being paid or seeking criminal relief, but Inv. Williams confirmed that CIs usually seek money or relief from criminal charges in exchange for the cooperation.

Lois Sharp ("Ms. Sharp"), the Defendant's sister, was the second witness to give testimony at the hearing. Ms. Sharp testified that she sees the Defendant two or three times per week. She testified that he is employed installing carpet and setting up trailers by a person she knew as Mr. Bunch. Ms. Sharp stated that the Defendant lives with his wife Leslie Sharp, whom Ms. Sharp noted

was due to have a baby on September 14, 2009. Ms. Sharp stated that the Defendant helps take care of his wife. Ms. Sharp said that she looks in on her brother. Ms. Sharp noted that the Defendant lives near their father and that the Defendant takes care of their father.

On cross-examination, Ms. Sharp explained that collectively the Defendant and Leslie Sharp have four children. Ms. Sharp stated that some of the children were in the custody of their grandmothers and/or mothers and some were in the custody of the State of Tennessee. Ms. Sharp stated that she was aware that Leslie Sharp had changes pending against her for selling oxycontin. On redirect examination, Ms. Sharp confirmed that the Defendant and Leslie Sharp are appealing the child custody decisions.

### III. DECISION

Pursuant to 18 U.S.C. § 3148, the Court must enter an order of revocation and detention, if it:

> (1) finds that there is--
>
> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>
> (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that--
>
> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

4

18 U.S.C. § 3148(b).

At step one of the analysis under § 3148(b), the Court finds the video evidence presented to be of minimal value. Nonetheless, the Court finds that the testimony of Inv. Williams was reliable evidence, albeit hearsay evidence, supporting a finding of probable cause. Thus, the Court finds both probable cause to believe that the Defendant has committed a federal, state, or local crime[1] and also clear and convincing evidence that the Defendant has violated the terms of his release

Moving to the second step, the Court finds that, given his strong ties to the Anderson County community, the Defendant is not a flight risk. Nonetheless, the Court finds that there is no condition or combination of conditions of release that will assure that the Defendant will not pose a danger to the safety of any other person because there is probable cause to believe he continues to engage in the drug trade. Further, the Court finds that the Defendant is unlikely to abide by any condition or combination of conditions of release because there is probable cause to believe that the Defendant continues to break both federal and state laws by engaging in the sell of prescription narcotics.

Accordingly, the Order Setting Conditions of Release **[Doc. 9]** is hereby **REVOKED**, and the Defendant is remanded to the custody of the United States Marshal Service pending his trial on September 22, 2009, before the Honorable Thomas A. Varlan, United States District Judge.

**IT IS SO ORDERED.**

ENTER *nunc pro tunc* June 26, 2009:

　　s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] At the hearing the Defendant presented an initial argument that he had not committed a felony and that, therefore, revocation was not warranted. Examining the face of the statute, the Court finds there is no requirement that the crime committed be a felony. Thus, the Court finds that, to the extent this is an issue, the Defendant's argument is not well-taken.

5