UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:07-CR-124 |
| | ) | (VARLAN/SHIRLEY) |
| MICHAEL RODNEY SHARP, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Defendant Michael Rodney Sharp is charged in the First Superseding Indictment in this case [Doc. 19] with nine counts of federal firearms violations. Defendant filed a Motion to Suppress Statement [Doc. 89] and a memorandum of law in support [Doc. 90], in which he argues that several statements he made to police officers during their execution of a search warrant at his home should be suppressed. The government filed a response in opposition to this motion [Doc. 91].

Magistrate Judge C. Clifford Shirley, Jr. held suppression hearings on September 17, 2009 [Doc. 101] and October 20, 2009 [Doc. 105]. On November 19, 2009, Judge Shirley filed a 40-page Report and Recommendation (the "R&R") [Doc. 111], in which he recommended that the motion to suppress be denied. Defendant filed Objections to the Report and Recommendation on Defendant's Motion to Suppress [Doc. 113]. The government filed a response to those objections [Doc. 115]. This matter is before the Court on defendant's objections.

The Court has carefully considered the motion to suppress, the response, the R&R, the objections, and the response to those objections. For the reasons that follow, the Court will overrule defendant's objections, accept in whole the R&R, and deny the motion to suppress.

The Court turns first to the findings of fact Judge Shirley made in his R&R.

I. **Findings of Fact**[1]

On August 27, 2009, Detective Roger Day, Sergeant Jim Leinart, and Lieutenant Danny Bowie, along with several other police officers, executed a search warrant at the defendant's home. These three officers arrived at the home at approximately 9:00 a.m. The defendant's wife, Leslie Sharp, answered the door and allowed the officers to enter.

Defendant was asleep in an upstairs bedroom when the officers entered the home. After entering, Day and Leinart approached the stairs leading up to the bedroom where the defendant was sleeping, announced their presence, and called for the defendant to come down. Day held his service firearm in a "low-ready" position, with the muzzle pointed downward, as he continued to announce the officers' presence, and instructed the defendant to come downstairs. Day and Leinart began to make their way up the stairs, but the defendant appeared at the top of the stairs in his underwear before the officers reached the

---

[1]Judge Shirley based his findings of fact on the suppression hearing testimony of Detective Roger Day, Sergeant Jim Leinart, and Lieutenant Danny Bowie, three officers employed by the Anderson County Sheriff's Department who were present for the execution of the warrants at defendant's home; a review of the exhibits presented at the suppression hearings; and the parties' memorandums [Doc. 111]. The findings of fact reproduced in this Part are taken from Judge Shirley's R&R [*see id.*].

top. Defendant's appearance at the top of the stairs occurred approximately one minute after the officers entered the home.

After revealing himself to the officers, the defendant was permitted to return briefly to the bedroom to put on pants. Thereafter, Day led the defendant downstairs to the kitchen table, and asked him to be seated. At that time, Bowie was sitting at the table, and Ms. Sharp was nearby in the living room or in the kitchen area. Defendant sat at the table while Day and Leinart went to the upstairs bedroom to conduct their search. Day located a .22 caliber pistol under the dresser in the bedroom, and informed Leinart. Leinart photographed the pistol where it was found, set the pistol on top of the dresser, and took a second photograph of the pistol.

Day then took the pistol downstairs and placed it on the table where Bowie and the defendant were seated. Neither Day nor Bowie asked the defendant any questions about the pistol. Shortly thereafter, the defendant stated that the pistol belonged to his brother.

The officers continued to search the defendant's residence. They decided that an additional search warrant was needed because the original search warrant limited their search to narcotics and money related to the narcotics trade. At approximately 11:00 a.m., an Anderson County Juvenile Court judge signed a second search warrant for the defendant's home, empowering the officers to look for stolen goods.

Leinart and the defendant later walked around the defendant's property, discussing the ongoing search for stolen goods. At some point during their conversation, the defendant stated that the pistol previously placed on the kitchen table in front of him belonged to his

brother, and that his brother used it to shoot rats. Officers subsequently searched the defendant's wallet and found a fifty-dollar bill inside that had been marked as part of the controlled buy which served as the basis for the issuance of the original warrant. The officers handcuffed the defendant and placed him under arrest. The defendant was then taken to the Anderson County Detention Facility, where he was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and questioned at approximately 8:00 p.m. The defendant returned to his home later that night after posting bond.

**II.     Analysis**

In the R&R, Judge Shirley found that the defendant was neither in custody nor under interrogation for *Miranda* purposes either when he was seated at the kitchen table or when he was walking around his property with Leinart [Doc. 111]. Judge Shirley thus denied the defendant's motion to suppress the statements defendant made while seated at the kitchen table and while walking with Leinart.

The defendant objects now to the R&R on four grounds: first, that he was in custody for *Miranda* purposes when he was directed by Day to sit at the kitchen table; second, that he was in custody for *Miranda* purposes when the pistol was discovered and placed in front of him on the kitchen table; third, that he was subject to questioning or the functional equivalent of questioning when he was seated at the kitchen table; and fourth, that he was in custody and subject to express questioning or its functional equivalent when he was walking around his property with Leinart [Doc. 113]. The government responds that the defendant was not "in custody" for *Miranda* purposes either when he was seated at the kitchen table or

4

when the pistol was placed in front of him at the kitchen table, and that the defendant was not subject to questioning or its functional equivalent either when he was seated at the kitchen table or when he was walking around his property with Leinart [Doc. 115]. The Court considers each objection below in turn.

### A. "In Custody": Initial Seating at Kitchen Table

Defendant first argues that he was in custody for *Miranda* purposes when he was seated at the kitchen table before Day placed the pistol in front of him [Doc. 113]. In support of this argument, defendant points out that, when he was seated at the table, numerous officers were in his home executing a search warrant [*Id.*]. He argues further that an officer with a "weapon drawn" [presumably Day] directed him to be seated at the kitchen table, where Bowie was sitting at the time [*Id.*]. In response, the government argues that Day's pistol was only unholstered in the brief period of time before the defendant showed himself at the top of the stairs and was clearly unarmed, and that Day thereafter holstered his weapon [Doc. 115].

*Miranda* requires law enforcement officers to give warnings before interrogating individuals who are "in custody." *Stansbury v. Cal.*, 511 U.S. 318, 322 (1994). "In drawing the line between a non-custodial encounter between a citizen and the police (where *Miranda* does not apply) and a custodial encounter (where it does), courts consider 'all of the circumstances' surrounding the encounter." *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009). Several factors guide the inquiry into whether a defendant was in custody, including "the location of the interview; the length and manner of questioning; whether the

individual possessed unrestrained freedom of movement during the interview; and whether the individual was told he or she need not answer the questions." *Id.* (citing *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003)). The "ultimate inquiry" is whether a "'formal arrest' occurred or whether there was a 'restraint on freedom of movement of the degree associated with a formal arrest.'" *Panak*, 552 F.3d at 465 (quoting *Stansbury*, 511 U.S. at 322). "[A]n in-home encounter between the police and a citizen generally will be non-custodial." *Panak*, 552 F.3d at 466. "The number of officers, the show of authority, the conspicuous display of drawn weapons, [and] the nature of the questioning," however, "all may transform one's castle into an interrogation cell." *Id.*

The defendant was not "in custody" for *Miranda* purposes when he was seated at the kitchen table before Day placed the pistol in front of him. The interview in question took place in defendant's own home [Doc. 111]. Judge Shirley found, based upon a thorough examination of the testimony of the three officers, that the execution of the search warrant was performed in a "respectful and cordial" manner [*Id.*]. Day's weapon was drawn only briefly, upon his entry to the home and shortly thereafter, and was holstered as soon as it was clear that the defendant was unarmed [*Id.*]. All of the officers testified that the defendant was asked, not directed, to sit at the kitchen table, and that the defendant did so willingly [*Id.*]. While approximately five officers were on the scene during the execution of the search warrant, at no time did they gather around the defendant so as to intimidate him [*Id.*]. To the contrary, the defendant had enough freedom of movement that he was able to tend to his children, who were also on scene during the execution of the warrants [*Id.*]. Defendant did

6

not request to leave the home [*Id.*]. Nor was he told that he could not leave [*Id.*]. Because the defendant was not in custody for *Miranda* purposes when he was seated at the kitchen table, no warnings were required at that time, and no statement as to the ownership or purpose of the pistol made during that time will be suppressed.

**B.	"In Custody": Seating at Kitchen Table After Day Placed the Pistol on the Kitchen Table**

Defendant next argues that, even if he were not in custody for *Miranda* purposes when he was first seated at the kitchen table, he was nevertheless in custody for *Miranda* purposes when the officers placed the pistol on the table in front of him [Doc. 113]. In support of this argument, defendant points out that the officers knew he was a convicted felon, and also knew the consequences defendant would face were he found to be in possession of a firearm [Doc. 113]. The government rejects this argument, arguing instead that the defendant "was seated, without handcuffs, at his own kitchen table when he made a spontaneous statement regarding a gun found in his bedroom" [Doc. 91].

The defendant was not in custody for *Miranda* purposes when Day placed the pistol in front of him while he was seated at the kitchen table. Defendant argues that a reasonable person in his position would not feel free to leave [Doc. 113]. In doing so, however, he relies heavily on his own subjective beliefs about the suspicions that the police officers, having just discovered a firearm in the home of a convicted felon, must have harbored at the time. That is not the test for *Miranda* custody. "The test must be not what the defendant himself . . . thought, but what a reasonable man, *innocent of any crime*, would have thought had he been

7

in the defendant's shoes." *United States v. Galloway*, 316 F.3d 624, 629 (6th Cir. 2003). A reasonable man innocent of any crime would feel no less free to leave after the pistol was placed on the table than before it was placed there. The Court thus reaches the same conclusion in the former circumstance as it does in the latter. The defendant was not in custody for *Miranda* purposes when he was seated at the kitchen table, either before or after the pistol was placed there. No warnings were required. Thus, the statement he made at the table that the pistol "belonged to his brother" will not be suppressed.

### C. "Express Questioning or its Functional Equivalent": Statement at Kitchen Table

Having determined that the defendant was not in custody for *Miranda* purposes while he was seated at the kitchen table, the Court need not consider whether he was interrogated for *Miranda* purposes while he was seated there. Even assuming that the defendant was in custody for *Miranda* purposes when he was seated at the kitchen table, however, the Court also finds that the defendant was not interrogated for *Miranda* purposes. The duty to warn under *Miranda* arises in custody situations "whenever there is 'express questioning or its functional equivalent.'" *United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir. 1997) (quoting *R.I. v. Innis*, 446 U.S. 291, 300-01 (1980)). "Interrogation" under *Miranda* thus "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301. "[W]here a defendant [in custody] makes a voluntary statement without being questioned or pressured

by an interrogator," however, "the statements are admissible despite the absence of *Miranda* warnings." *Murphy*, 107 F.3d at 1204 (citing *United States v. Montano*, 613 F.2d 147, 149 (6th Cir. 1980)).

Defendant argues that Day's placing the pistol on the kitchen table in front of him was tantamount to interrogation, in that it was "likely to elicit an incriminating response" [Doc. 113]. In support of this argument, the defendant points out that no other pieces of evidence were placed on the kitchen table [*Id*]. The government argues that the police conduct at issue was not calculated to elicit a response [Doc. 91].

Defendant's argument is unavailing. As Judge Shirley found, the police officers could not reasonably have known that merely placing a pistol in front of the defendant, as part of their "standard operating procedure" during the execution of a routine search warrant, would be likely to elicit an incriminating response. The collection and production of evidence during a search is instead a practice "normally attendant to arrest and custody." *See Innis*, 446 U.S. at 300. Thus, no interrogation occurred that would trigger the *Miranda* requirement here.

**D.** **"In Custody" and "Express Questioning or its Functional Equivalent": Conversation with Leinart**

Lastly, defendant argues that his statement to Leinart that the defendant's brother used the pistol to shoot rats should be suppressed because the defendant was both in custody and being interrogated when he made it. In support of this argument, he argues only that Leinart was asking the defendant about stolen goods when the defendant made the statement. In

9

response, the government relies upon its arguments at the suppression hearing to the contrary [Doc. 115].

Defendant's final argument is also unavailing. As Judge Shirley found, the defendant was "even less constrained" when he made this statement than when he was seated at the kitchen table [Doc. 111]. Leinart testified, moreover, that the defendant's comments to him were not made in response to a question, but were merely "mentioned" during their conversation [*Id.*]. Judge Shirley credited this testimony [*Id.*]. This Court sees no reason to second-guess that determination. Defendant's statement will not be suppressed on this basis either.

Defendant was neither in custody nor under interrogation for *Miranda* purposes when he made the statements that are currently at issue before the Court. Accordingly, the Court **OVERRULES** defendant's Objections to the Report and Recommendation on Defendant's Motion to Suppress [Doc. 113]. The Court **ACCEPTS IN WHOLE** the Report and Recommendation [Doc. 111]. Defendant's Motion to Suppress [Doc. 89] is hereby **DENIED**.

IT IS SO ORDERED *NUNC PRO TUNC* January 4, 2009.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE