UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:07-CR-124 |
| | ) | (VARLAN/SHIRLEY) |
| MICHAEL RODNEY SHARP, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court, as may be appropriate. The case came before the undersigned on January 11, 2010, to address the Defendant's Motion to Dismiss or for Witness Immunity [Doc. 116], (hereinafter "Motion to Dismiss"). Assistant United States Attorney Tracy Stone was present representing the Government. Attorney Ralph Harwell and Attorney Jonathan Harwell were present representing the Defendant, who was also present.

The Defendant filed a Motion for Leave to File Motion to Dismiss or for Witness Immunity on November 3, 2009. [Doc. 107]. The Government filed a response in opposition to both the Motion for Leave and the substance of the Motion to Dismiss on November 17, 2009. [Doc. 110]. The Motion for Leave was granted, and on December 22, 2009, the Defendant filed his Motion to Dismiss or for Witness Immunity. [Docs. 116 and 117]. The parties appeared before the Court on January 11, 2010, to address the Motion to Dismiss. On January 28, 2010, the Defendant filed a Motion for Leave to File Notice of Relevant Decision [Doc. 129], which was granted on February 3, 2010, [Doc. 131]. The Notice of Relevant Decision was filed on February 4, 2010.

**I.     PERTINENT BACKGROUND**

The Defendant has been indicted in a nine count Superseding Indictment with violating 18 U.S.C. §922(g), by being a felon in possession of a firearm and/or ammunition, and violating 18 U.S.C. §922(j), by knowingly possessing a stolen firearm. The Defendant anticipated calling Carl Bunch Jr., ("Mr. Bunch"), as a witness at trial. The Defendant states that Mr. Bunch was expected to testify that a number of the weapons, which the Defendant is alleged to have possessed, are Mr. Bunch's weapons. [Doc. 117 at 2].

Agent Jason Dobbs, of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, ("ATF"), interviewed Mr. Bunch on September 10, 2009, at Mr. Sharp's residence. [Case No. 3:09-CR-127, Doc. 1 at 3; see also Case No. 3:07-CR-124, Doc. 117 at 4]. On September 21, 2009, Agent Dobbs interviewed Mr. Bunch's wife, Stacy Bunch, at their residence and observed a number of firearms on and around a gun rack in the home. [Case No. 3:09-CR-127, Doc. 1 at 3; see also Case No. 3:07-CR-124, Doc. 117at 4]. On September 22, 2009, Agent Dobbs again interviewed Mr. Bunch, and Mr. Bunch mentioned that he had previously been convicted of domestic violence approximately ten years before. [No. 3:09-CR-127, Doc. 1 at 3; see also No. 3:07-CR-124, Doc. 117at 4]. Another ATF Agent obtained a certified copy of a misdemeanor domestic violence conviction in State of Tennessee v. Carl Bunch, No. 98 7640N, from the General Sessions Court of Knox County, Tennessee, dated June 23, 1998. [No. 3:09-CR-127, Doc. 1 at 4].

On September 23, 2009, the undersigned signed a criminal complaint against Mr. Bunch based upon the affidavit of Agent Dobbs, finding probable cause to believe that Mr. Bunch, having been convicted in a court of a misdemeanor crime of domestic violence, did possess a firearm in violation of 18 U.S.C. § 922(g)(9). [Case No. 3:09-CR-127, Doc. 1 at 2]. On October 6, 2009, Mr.

Bunch was charged in a single count Indictment with unlawfully possessing a firearm after having been convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(9). [Case No. 3:09-CR-127, Doc. 9].

The instant motion followed.

## II.   POSITIONS OF THE PARTIES

The Defendant maintains that the charge against Mr. Bunch is unsupportable, as the underlying domestic violence conviction is not a domestic violence conviction sufficient to trigger 18 U.S.C. § 922(g)(9). [Doc. 117 at 9-12]. The Defendant maintains that the Government improperly indicted Mr. Bunch and, thereby, improperly interfered with the Defendant's right to present witnesses at trial and right to due process under the United States Constitution. [Doc. 117 at 15-16]. The Defendant argues that these violations should be remedied by either dismissing the indictment in the present case or by granting Mr. Bunch immunity as to any testimony he might give on the Defendant's behalf in this case. [Doc. 117 at 16-20].

The Government maintains that its agents and attorneys were merely fulfilling their obligation to enforce the laws of the United States and were not threatening Mr. Bunch in order to influence his testimony. [Doc. 110 at 3]. The Government notes that the facts underlying the charges against Mr. Bunch were presented to both a neutral member of the judiciary and a neutral grand jury. [Doc. 110 at 4]. The Government argues that any argument regarding statutory interpretation should be presented to a jury in Mr. Bunch's case, not the instant matter, and the Government further disputes Mr. Bunch's ability to attack his prior conviction. [Doc. 110 at 6-9]. The Government maintains that the Defendant cannot confer immunity on Mr. Bunch, simply by presenting him as an expected witness, [Doc. 110 at 11], and argues that the Defendant's Motion has no merit.

## III. TESTIMONY

At the hearing held January 11, 2010, the Court heard from three witnesses: Sherri Elliott, Jerry Wayne Day, and Jason Dobbs. There testimony was as follows:

### A. Sherri Elliott

Sherri Elliott ("Ms. Elliott") stated her address in Caryville, Tennessee. She agreed that she had never met Attorney Harwell[1] before the hearing. Ms. Elliott said she met with Jerry Day, an investigator for the Defendant, she noted that Mr. Day was the first person she met with in connection with this matter. Ms. Elliott said Mr. Day asked her questions regarding Mr. Bunch. Ms. Elliott confirmed that she knew Mr. Bunch and had known him for a couple years. When shown her affidavit regarding an incident in 1998, Ms. Elliott agreed that she had known Mr. Bunch since 1998.

Ms. Elliott confirmed that she dated Mr. Bunch, although she did not know the time period that they dated. She noted that it was not a "regular thing." Ms. Elliott said that after the first date she did not want to date Mr. Bunch anymore. Ms. Elliott said Mr. Bunch was "Okay as a friend," but she did not hold their relationship out as being a couple. Ms. Elliott remarked that he may have held them out as a couple, but she did not. Ms. Elliott confirmed that she and Mr. Bunch did not have any children, did not live together, and did not share spousal duties. Ms. Elliott said she did not keep things at Mr. Bunch's house and did not stay at his house. Ms. Elliott said Mr. Bunch did stay over at her house more than once. Ms. Elliott explained that she was doing work on her house at the time, and Mr. Bunch would help with the work. Ms. Elliott remarked that if a "bunch of friends" came to her home, Mr. Bunch might stay over.

---

[1] References to Attorney Harwell in the testimony portion of the opinion refer to Attorney Ralph Harwell, who conducted the questioning of witnesses at the hearing on behalf of the Defendant.

Ms. Elliott said she could not remember how long it had been since Mr. Bunch came to her house at the time the domestic violence warrant[2] issued. Ms. Elliott explained that when she was first told about the warrant she did not think it was related to her until she saw her signature on it. Ms. Elliott stated that the relationship had always had turmoil, and she stated that after a while she did not want to be friends with Mr. Bunch. Again, Ms. Elliott stated that her and Mr. Bunch's interactions "were not even a relationship." She testified that after the first date she did not want to see him.

When asked about a person named Danny, Ms. Elliott stated that Danny had been her friend for years. She explained that at the time of her involvement with Mr. Bunch she had Danny over to her house more because of Mr. Bunch—Ms. Elliott implied that Danny's presence was mean to keep Mr. Bunch away. Ms. Elliott said that Danny is now her boyfriend.

Ms. Elliott said she knew that the conversations she had with Mr. Day were recorded; she said that she thought if she answered his questions she would not have to come to court. Ms. Elliott confirmed that Agent Jason Dobbs from the ATF came to her home and asked the same questions. Ms. Elliott said Agent Dobbs asked her about Mr. Bunch, but she did not recall him showing her the warrant. Ms. Elliott confirmed that Agent Dobbs asked if someone else had been to the visit her, and she told him that Mr. Day had been there. Ms. Elliott stated that Agent Dobbs told her that if he found out someone was lying to him, they would be prosecuted for perjury. She noted that he might tell everyone he interviews that, but she stated that it scared her. Ms. Elliott testified that Agent

---

[2]The Court's references to the "domestic violence warrant" or "warrant" refer to the warrant dated May 4, 1998, which has been filed with the Court as Document 117-1. The use of the term "domestic violence" is meant for clarification or as an accurate recitation of the testimony at the hearing. It in no way reflects any analysis or judgment regarding the issue of whether the conviction is a qualifying "misdemeanor crime of domestic violence," under 18 U.S.C. § 922(g)(9).

5

Dobbs stayed about five minutes at her home; she noted this was not as long as Mr. Day had stayed. Ms. Elliott stated that Danny may have walked into the room while Agent Dobbs was there, and she said that Agent Dobbs did not stay there long enough to sit down. Ms. Elliott agreed that she was scared when Agent Dobbs was there, but she remarked that she was a nervous person anyway.

In regards to her interaction with Attorney Harwell's office, Ms. Elliott said that she thought she could execute an affidavit and "stay out of this."

Ms. Elliott confirmed that Agent Dobbs brought her the Grand Jury subpoena issued for testimony in Mr. Bunch's case. Ms. Elliott said that she saw Agent Dobbs and AUSA Stone outside of the Grand Jury room before she testified before the Grand Jury. Ms. Elliott said Agent Dobbs and AUSA Stone just told her what was going to happen in the Grand Jury. Ms. Elliott recalled AUSA Stone stating that the federal law at issue was different from the state law on the issue and depended in part on the number of years that had passed. Ms. Elliott said neither Agent Dobbs nor AUSA Stone said they did not believe her. She said that the told her they had potential charges against Mr. Bunch and explained what was going to happen. Ms. Elliott said she remarked that she did not know about the domestic violence restriction on having weapons, and she recalled AUSA Stone stated that ignorance was no excuse. Ms. Elliott said she took this comment to meant a person could get in trouble for it, but she said AUSA Stone did not talk about Mr. Bunch with her. Ms. Elliott said that Agent Dobbs did not talk to her about perjury again at the Grand Jury; he just said not to be nervous. Ms. Elliott testified that AUSA Stone stated the penalty for lying to the Grand Jury, but he did not say anything about prosecuting someone if they fabricated testimony.

Turning back to her discussions with Agent Dobbs, Ms. Elliott said that she did not tell Agent Dobbs that she did not remember the Wal-Mart incident because she knew what Agent Dobbs was

6

talking about because Mr. Day had recently discussed it with her. Ms. Elliott said Agent Dobbs never told her that he did not believe her. She said he told her the penalties, but it was her impression that he tells everyone he interviews that.

Finally, turning back to the events at the Grand Jury, Ms. Elliott said that Agent Dobbs and AUSA Stone did not say they were investigating Mr. Bunch because he was the Defendant's friend. Ms. Elliott said she knew that the <u>Bunch</u> case and <u>Sharp</u> case were connected. Ms. Elliott said Agent Dobbs and AUSA Stone did not have to talk about it because she knew they were connected. Ms. Elliott testified that Agent Dobbs and AUSA Stone did state that Bunch was being charged with possession of guns and that he claimed the guns from the <u>Sharp</u> case were his guns. Ms. Elliott said nothing else was mentioned about the Defendant.

On cross-examination, Ms. Elliott stated that she and AUSA Stone met both inside and outside of the Grand Jury, and she agreed that it may be difficult to distinguish conversations that took place in each of the settings. Ms. Elliott first stated that she was so nervous at the Grand Jury that she could not remember whether AUSA Stone had gone over her rights with her. However, she agreed that he had advised her of her right to any attorney, and she said he must have gone over them with her. Ms. Elliott agreed that AUSA Stone went over the nature of the charges at issue and told her about her right against self-incrimination under the Fifth Amendment to the United States Constitution, and she remarked that she thought as long as she told the truth it would not matter. Ms. Elliott confirmed that AUSA Stone told her the proceedings would be secret, and she remarked that she remembered the statement about secrecy because "Lake City is a small town." Ms. Elliott testified that AUSA Stone then told her what perjury was and advised her of the penalties.

7

At the conclusion of the cross-examination, AUSA Stone moved to enter the transcript of Ms. Elliott's testimony before the Grand Jury into evidence under seal. It was received into evidence under seal as Exhibit 1.

**B.    Jerry Day**

The next witness at the hearing was Jerry Day, an investigator for the Defendant. Mr. Day confirmed that he filed an affidavit in this case, [Doc. 117-2]. Mr. Day agreed that he helped draft the affidavit, approved it, and signed it. Mr. Day stated that it was the truth, and he agreed that the domestic violence warrant had been attached to the affidavit.

Mr. Day confirmed that he took the domestic violence warrant with him when he went to speak with Ms. Elliott. Mr. Day testified that, as far as he could tell, when he showed Ms. Elliott the warrant, it was the first time she had seen it. Mr. Day testified that Ms. Elliott verified her signature on the warrant's affidavit. Mr. Day said he had Ms. Elliott sign an affidavit, and he confirmed that he also recorded their conversation. Mr. Day testified that he had read the transcript of the conversation with Ms. Elliott.

Mr. Day said Ms. Elliott did not come to meet with him at Mr. Harwell's office on a later agreed date. Mr. Day said he called her, and she returned his call on October 5, 2009. Mr. Day said Ms. Elliott stated that she did not want to come to the office. Mr. Day testified that Ms. Elliott said she had gone to the Grand Jury and did not want to come to the office. Mr. Day said he spoke to Danny the Wednesday before the hearing held on January 11, 2010, and Danny said he had heard part of the conversation between Agent Dobbs and Ms. Elliott. Mr. Day said Danny characterized Ms. Elliott as being "scared to death."

The Government did not cross-examine Mr. Day.

### C. Agent Jason Dobbs

The final witness at the hearing was Agent Jason Dobbs of the ATF. Agent Dobbs confirmed that he was working in the same capacity in October 2009. Agent Dobbs testified that he interviewed Ms. Elliott at her apartment in October 2009. Agent Dobbs confirmed that he had a report from the interview and that he read over a portion of it prior to testifying. Agent Dobbs said the only other person present during the interview was Danny, when he briefly walked into the room. Agent Dobbs estimated that the interview took ten to fifteen minutes. Agent Dobbs said he did not discuss the case's current standing or the Sharp case with Ms. Elliott. Agent Dobbs could not recall if he mentioned Mr. Bunch's connection to the Sharp case, but he said his notes only reflected asking Ms. Elliott about her relationship with Mr. Bunch.

Agent Dobbs said the purpose of the interview was to determine how close Ms. Elliott and Mr. Bunch's relationship was in 1998. Agent Dobbs said he asked Ms. Elliott about whether she and Mr. Bunch lived together and whether they had children. Agent Dobbs said he thought he also asked her about whether he kept clothing at her house, but Agent Dobbs recalled Ms. Elliott saying that she was having a hard time remembering. Agent Dobbs stated that the "long and short of it" was that there was a relationship of a sexual nature that involved two to three dates, but it was one-sided, in that Mr. Bunch wanted the relationship and Ms. Elliott did not. Agent Dobbs said that Ms. Elliott only vaguely recalled the Wal-Mart incident. However, she said that the police had been called to come out to address conflicts between the two of them a couple of times.

Agent Dobbs said that, when Ms. Elliott could not remember the incidents, he told her he found it hard to believe that she could not remember being attacked and a warrant being issued, but Agent Dobbs noted that he did so in a non-threatening way. Agent Dobbs said he advised Ms. Elliott

9

of the penalties for perjury at the beginning of the interview.

Agent Dobbs said he did not recall asking Ms. Elliott if anyone had told her what to say, nor did he recall asking her what her thoughts were about Mr. Day. Agent Dobbs recalled Ms. Elliott saying she had an appointment with Attorney Harwell. Agent Dobbs said Ms. Elliott indicated she did not enjoy being involved in this matter, and she asked him if she had to go to the appointment.

The Government did not cross-examine Agent Dobbs.

## IV. FINDINGS OF FACT

To the extent the Court makes findings of fact, those findings will be incorporated in the Court's analysis below.

## V. ANALYSIS

The Defendant argues that: the charges against Mr. Bunch cannot render a conviction, the charges were meant to intimidate Mr. Bunch as a witness, this intimidation is a violation of the Defendant's constitutional rights, and the remedy for these violations is either dismissal of the charges against the Defendant or a granting of immunity to Mr. Bunch. [See Doc. 117]. The Government disputes each portion of the Defendant's argument. [See Doc. 110]. The Court will address each prong of the Defendant's position in turn.

### A. Likelihood of Conviction

Mr. Bunch has been charged pursuant to 18 U.S.C. § 922(g)(9), which provides that it is unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence" to possess a firearm in or affecting interstate commerce. A "misdemeanor crime of domestic violence" is defined as an offense that:

> (i) is a misdemeanor under Federal, State, or Tribal law; and

> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim . . .

18 U.S.C. § 921(a)(33)(A).

The Defendant argues that Mr. Bunch's relationship does not fall within any of the relationships identified in the statute, and thus, the Government is unable, as a matter of law, to prove an element of the alleged crime. Mr. Bunch himself raised this exact issue in his own case. In addressing this argument, the Honorable H. Bruce Guyton, United States Magistrate Judge explained:

> The Court finds that the question of whether the alleged assault offense at issue was a "misdemeanor crime of domestic violence" is a question of law. However, this legal question can only be answered by the Court based upon resolution of a sub-question–that is, whether the Defendant was "a person similarly situated to a spouse" of the victim of the assault offense at the time it was committed. This sub-question is a mixed question of law and fact. It is a question of law because the phrase "a person similarly situated to a spouse" in 18 U.S.C. § 921(a)(33)(A)(ii) has been neither statutorily defined, nor judicially interpreted by the Supreme Court or the Court of Appeals for the Sixth Circuit. Accordingly, the Court must review other persuasive authorities to determine the proper test for whether a relationship is similar to a spousal relationship for the purpose of 18 U.S.C. § 921(a)(33)(A)(ii). The question is one of fact because once the Court has determined the test for similarity to a spousal relationship, the jury must make factual findings about the relationship that existed between the Defendant and the victim of the alleged assault. The Court will properly instruct the jury as to what it must find about that relationship in order to decide whether the Government has proved that the Defendant was "a person similarly situated to a spouse" of the victim.

[Case No. 3:09-CR-127 Doc. 25 at 13; Case No. 3:07-CR-124 Doc. 132-1 at 13]. Based upon these

outstanding issues, Judge Guyton concluded that are questions to be presented to the District Judge and/or jury at trial of Mr. Bunch's case.

The undersigned concurs in Judge Guyton's analysis of the issues of fact and law presented, and similarly concludes that whether the charges against Mr. Bunch are unsupportable is an issue to be left to the jury or District Judge in Mr. Bunch's case. The Defendant argues that Judge Guyton's ruling in Mr. Bunch's case should not affect the resolution of the Motion to Dismiss in this case, and while this Court is inclined to disagree with this statement, whether or not the ruling in Mr. Bunch's case "affects" this Court's ruling, this Court nonetheless "agrees" with the ruling. Based upon the evidence before the Court there is certainly ambiguity about the relationship between Mr. Bunch and Ms. Elliott. Accordingly, the Court cannot say that, as a matter of law, the Government will be unable to prove that Mr. Bunch and Ms. Elliott had a relationship similar to a spousal relationship. However, for the reasons stated below, the Court finds that even if the charge against Mr. Bunch cannot be sustained, dismissal and/or witness immunity are not appropriate in the matter now before the Court.

**B.     Witness Intimidation and Constitutional Violations**

It is well-established that the right to present witnesses in one's defense is a right guaranteed under the United States Constitution. As the Supreme Court of the United States has explained, "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." Washington v. Texas, 388 U.S. 14, 19 (1967); see also Chambers v. Mississippi, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense.") Actions short of full-

12

exclusion may constitute an unlawful infringe upon the defendant's right to present witnesses. For example, the Court of Appeals for the Sixth Circuit "has found that government conduct which amounts to substantial interference with a witness' free and unhampered determination to testify will violate due process." United States v. Foster, 128 F.3d 949, 953 (6th Cir. 1997) (citing United States v. Pierce, 62 F.3d 818, 833 (6th Cir.1995)).

*1. Ms. Elliott*

The Defendant has, through his questioning of Ms. Elliott and filings in this matter, alluded to prosecutorial misconduct that might have taken place in the Grand Jury proceedings in United States v. Bunch, 3:09-CR-127. The Court finds that these allegations are not properly before this Court and any remedy for any misconduct in United States v. Bunch, should be sought in that case, wherein they are presently the subject of a similar motion, not in the instant case. The Defendant has not indicated any intent to call Ms. Elliott or that she has been hampered from, or would be an unwilling or unavailable witness, in the instant matter. Instead, the Defendant alleges that Mr. Bunch was improperly indicted, which interfered with the Defendant's right to call Mr. Bunch as a witness. The allegations as to the encounters with Ms. Elliott have not been shown to constitute any improper interference with Mr. Bunch and/or the Defendant's right to call Mr. Bunch as a witness.

Further, even if such conduct in United States v. Bunch were related to this matter, the Court finds a lack of evidence to indicate that the Government, its attorneys or agents, improperly intimidated Ms. Elliott. As the Court of Appeals for the Sixth Circuit has explained, "the government has an obligation to warn unrepresented witnesses of the risk that the testimony they are going to give can be used against them." Pierce, 62 F.3d at 832 (citing United States v. Jackson,

13

935 F.2d 832, 847 (7th Cir.1991)). "Where, however, the substance of what the prosecutor communicates to the witness is a threat over and above what the record indicates is necessary, and appropriate, the inference that the prosecutor sought to coerce a witness into silence is strong." Id.

In the instant case, the testimony before the Court, both from Agent Dobbs and Ms. Elliott, indicates that Agent Dobbs followed standard procedure and advised Ms. Elliott of the importance of telling the truth in this matter and her legal obligation to do so. Ms. Elliott in describing the encounter noted that, while she was scared, she felt Agent Dobbs probably advised all interviewees in that fashion. See supra at 5-6. Similarly, as to AUSA Stone, neither Ms. Elliott's testimony nor the Grand Jury transcript indicate any threats toward Ms. Elliott and simply contain a standard perjury and incrimination warning, which the Government is obligated to give an unrepresented witness.

The evidence before the Court is that Ms. Elliott was warned and advised pursuant to the standard procedure and requirements for advising such unrepresented witnesses/interviewees. There is no evidence that Ms. Elliott was threatened or intimidated in a way that would discourage her from testifying truthfully. Thus, to the extent the issue is before this Court, the Court finds no evidence of misconduct by the Government in relation to Ms. Elliott.

2.   *Mr. Bunch*

The Defendant also maintains Mr. Bunch has been intimidated by the Government. The Defendant argues that the charges against Mr. Bunch were meant to discourage Mr. Bunch from testifying and render him unavailable as a witness on behalf of the Defendant at the trial of this case. Thus, the Defendant contends that the Government has violated his right to due process under the United States Constitution by preventing him from calling Mr. Bunch on his behalf.

14

The scenarios for intimidation presented in the applicable case law, generally, include a figure, either a government attorney or a judge, threatening a witness. See Pierce, 62 F.3d at 832 (recounting a loud interview by an investigator and an interview in which the investigator used profanity in a threatening manner but finding no error); see also United States v. Thomas, 488 F.2d 334, 335 (6th Cir. 1973) (ordering new trial where, after being advised of perjury penalties by government's attorney and court, witness was approached by a Secret Service agent involved in the case and told he would be prosecuted for misprision of a felony if he testified in the case); United States v. Vavages, 151 F.3d 1185 (9th Cir. 1998) (finding substantial interference with a witness where prosecutor articulated belief that testimony would be false, without substantive basis for the belief, and threatened to withdraw witness's plea agreement if witness supplied alibi).

The Defendant claims that the present matter presents a more egregious version of intimidation, because rather than threatening to charge the witness, the Government's attorney has actually charged Mr. Bunch with a crime. [Doc. 117 at 15]. The Government responds that its actions were not unilateral threats. [Doc. 110 at 4]. Instead, the Government maintains that the charges against Mr. Bunch were made based upon presentation of evidence to a neutral magistrate and the Grand Jury and their independent findings of probable cause. The Government maintains that the Defendant's desire to have Mr. Bunch serve as a witness at trial cannot immunize Mr. Bunch against criminal liability.

As the Supreme Court of the United States has instructed, a defendant's rights at trial must be balanced against other public interests. The Court in Taylor v. Illinois, 484 U.S. 400 (1988), explained, "It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation

15

of that right cannot automatically and invariably outweigh countervailing public interests." Id. at 414. The Court of Appeals for the Second Circuit, in addressing a situation that was factually analogous to the present case, explained that under Taylor, "The right to present a defense, and its concomitant right to compulsory process, are not unqualified; they are subject to 'countervailing public interests,' . . . such as the state's responsibility for arresting and prosecuting suspected criminals." Buie v. Sullivan, 923 F.2d 10, 11 (2d Cir. 1990) (quoting Taylor, 484 U.S. at 414).

In order to balance a defendant's rights against the public's countervailing interests, a defendant must establish both materiality of the evidence lost—in this case, testimony—and prosecutorial bad faith, prior to the court affording him or her a remedy. See Buie v. Sullivan, 923 F.2d 10, 11 (2d Cir. 1990); see also United States v. Tyson Foods Inc., 2003 WL 21095580 (Edgar, C.J.) (E.D. Tenn. January 28, 2003) ("To obtain an order dismissing the indictment, the defendants bear the burden of showing: (1) the government acted in bad faith by deporting or facilitating the voluntary departure of the alien witnesses; and (2) absence of the alien witnesses causes prejudice by depriving the defendants of evidence that would be both material and favorable to the defense.")

First, a defendant must show that the evidence lost was material and exculpatory, and that it was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Buie, 923 F.2d 10 at 11 (quoting California v. Trombetta, 467 U.S. 479, 489 (1984)). Further, a defendant must show bad faith on the part of the government, because "failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988); see also United States v. Santtini, 963 F.2d 585, 596-97 (3d 1992) ("As a general matter, even when actions by the prosecution appear to deprive a criminal defendant of his constitutional right to present a defense, no remedy will lie for such

16

infringement absent a showing that the government has caused the unavailability of material evidence and has done so in bad faith.") The Supreme Court of the United States has repeatedly "stressed the importance for constitutional purposes of good or bad faith on the part of the Government," where issues of lost evidence, including unavailable witnesses present themselves. Youngblood, 488 U.S. at 57.

In the present matter, the Government has not disputed the materiality of Mr. Bunch's proposed testimony. Because the Court finds that the Defendant fails to demonstrate bad faith, notwithstanding any showing of materiality, the Court will assume, *arguendo*, that Mr. Bunch's testimony would have been material and exculpatory and that the Defendant would not be able to obtain comparable evidence by other reasonably available means.[3] Further, the Court finds that Mr. Bunch's prosecution has not yet made his testimony unavailable, but even assuming Mr. Bunch heeds his attorney's advice not to testify in a manner that might incriminate himself in the present matter, [See Doc. 117-4 at ¶ 3], the Defendant has presented no evidence of bad faith by the Government in pursuing the charges against Mr. Bunch.

Turning to bad faith, the Court finds that the Defendant has presented no evidence that the Government or its agent made threats or used intimidation tactics against Mr. Bunch. The present matter is distinguishable from cases in which the Government or its agent makes a threat, often a

---

[3]As previously noted, the Defendant states that he will call Mr. Bunch to testify that a number of the firearms at issue in this matter belonged to Mr. Bunch and that he "had brought several guns from his own home [to the Defendant's home], for protection, safe-keeping, or repair." [Doc. 117 at 2]. Mr. Bunch's testimony is, at best, relevant, but not determinative of the issue of whether the Defendant is deemed to have possessed the firearms at issue. See United States v. Williams, 223 Fed. App'x (6th Cir. 2007) ("The prosecution need[s] to show only that [a defendant] possessed the gun, not that he was its legal owner: the legal ownership of the pistol is neither determinative nor particularly relevant to whether [a defendant who is] a felon whom the law proscribes from possessing a firearm, actually possessed it."); accord United States v. Wells, 100 Fed. App'x 440 (6th Cir. 2004), United States v. Hadley, 431 F.3d 484 (6th Cir. 2005).

threat of prosecution for perjury or other charge related directly to the testimony in close proximity to the time for testifying. Here there is no evidence of a threat. There is simply evidence of a prosecution for a crime, which the Government had reason to believe was being committed independently of any testimony Mr. Bunch was expected to give. All of the evidence in the record, indicates that the Government indicted Mr. Bunch without any conversations about what charges might be brought, let alone threats.

Further, the Defendant has presented no evidence that the Government charged Mr. Bunch with the crime at issue so as to have Mr. Bunch become, effectively, unavailable for trial. The Government simply found facts that would support a probable cause finding, and presented that evidence, first, to the undersigned and, thereafter, to the Grand Jury. The public's interest in having Mr. Bunch prosecuted for a crime for which there is probable cause to believe he committed outweighs the Defendant's desire to have Mr. Bunch free of charges or available for trial.

In sum, the Court finds that no constitutional violation has been committed in this case. First, assuming the issue is even properly before this Court, the Defendant has failed to show any intimidation of Ms. Elliott. Further, the Defendant has failed to show any bad faith on the part of the Government in bringing charges against Mr. Bunch and has failed to demonstrate an element of his due process claim for lost evidence. In light of the foregoing, the Defendant's position that the Government has violated his constitutional rights fails.

**D.     Remedy for Violations**

Having found no constitutional violation, the Court finds that the Defendant is not entitled to any remedy for his allegations. The Defendant argues that "dismissal is required irrespective of the good or bad faith of the Government." [Doc. 117 at 17]. This contention is simply unsupported

by the case law. As the Court of Appeals for the Sixth Circuit has explained, "[e]ven under circumstances where a constitutional right of the defendant has been violated, deliberately or otherwise, the defendant is entitled to the extreme sanction of dismissal of the indictment only where he can prove that he was demonstrably prejudiced by the violation." United States v. Talbot, 825 F.2d 991, 998 (6th Cir. 1987). The Defendant has failed to demonstrate a violation of his rights or prejudice, and he is not entitled to the "extreme sanction of dismissal."

Further, the Court of Appeals for the Sixth Circuit has "consistently held that a district court is without authority to either grant immunity to a witness who asserts his Fifth Amendment privilege against self incrimination or to force the government to do so." United States v. Talley, 164 F.3d 989, 997 (6th Cir. 1999). Of late, the Court of Appeals has expressed a willingness to retreat from this rule in "one narrow exception," wherein the government grants immunity to its own witnesses but not those of the defendant, but that exception is not relevant here. United States v. Emuegbunam, 268 F.3d 377, 401 n. 5 (6th Cir. 2001) (citing Talley, 164 F.3d at 997). Notwithstanding the Defendant's failure to demonstrate a constitutional violation, the only delineated exception to the rule against immunity is not relevant in the present matter, and granting immunity would be inappropriate.

Accordingly, the Court finds the Defendant is not entitled to either dismissal of the Indictment nor a grant of immunity to Mr. Bunch.

## VI.    CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing and after reviewing the relevant legal authorities, the Court finds the Defendant has failed to demonstrate a constitutional violation. The Court finds neither dismissal of the Indictment nor affording immunity to Mr. Bunch are appropriate or warranted. Therefore, it is **RECOMMENDED** that the Defendant's Motion to Dismiss or for Witness Immunity **[Doc. 116]** be **DENIED**.[4]

                                          Respectfully Submitted,

                                            s/ C. Clifford Shirley, Jr.
                                            United States Magistrate Judge

---

[4]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).